UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN MARK BURMASTER,

                            Plaintiff,

                                                               **Hon. Hugh B. Scott**

                                                                  **17CV1290V**

          v.

                                                           **Report**
                                                                  **&**
                                                     **Recommendation**

PFIZER INCORPORATED,

                            Defendant.

       This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 6).  The instant matter before the Court is a motion of defendant (Docket No. 3) to dismiss the Complaint.  Responses to this motion were due by March 2, 2018, with replies (if any) due by March 12, 2018, and the motion deemed submitted (without oral argument) on March 12, 2018 (Docket No. 8).

       In response, plaintiff initially filed a letter on February 11, 2018, with copies of papers and arguments he has made before the United States Court of Federal Claims in <u>Burmaster v. United States</u>, No. 17CV1903, contending that those arguments are similar to the ones against the defendant here, "the pharmaceutical behemoth, Pfizer Inc." (Docket No. 9, Pl. cover letter, Feb. 11, 2018, at 1, hereinafter "Pl. Letter").  As defendant argues in its Reply (Docket No. 10, at 2), this response is directed at the United States in this Court of Federal Claims case and not against Pfizer in this case.  Then, on March 14, 2018, plaintiff submitted a response directed to

defendant's arguments in its motion (Docket No. 11).  On March 22, 2018, this Court docketed

plaintiff's letter of March 9, 2018 (sent from Beirut, Lebanon), making argument from an

analogous case he has pending in the District of Minnesota (Docket No. 12, referring to

Burmaster v. American Psychiatric Ass'n, No. 17cv5210 (D. Minn.)).  In this letter, he asked that

all correspondence be directed to Milwaukee, Wisconsin (id.); the Court Clerk changed

plaintiff's mailing address to Milwaukee.

## BACKGROUND

*Complaint (Docket No. 1)*

  This is a pro se action apparently for violation of plaintiff's civil rights and a civil RICO

claim (Docket No. 1, Compl.).  Plaintiff paid the filing fee (see docketed receipt, filed Dec. 12,

2017), therefore the screening process required for pro se litigation where the plaintiff seeks in

forma pauperis status, see 28 U.S.C. § 1915, did not occur.  As alleged in the pro se Complaint

and attached appendices, plaintiff is an American citizen and chemical engineer (Docket No. 1,

Compl. at page 1).  He was recently released from federal custody; he alleges that federal

Government psychiatrists deemed him incompetent to stand trial in a criminal prosecution (id. at

pages 1, 2).  He alleges that he was imprisoned during two separate prosecutions "where

members of the American Psychiatric Association, using their methodology of 'chemical'

problem-solving as dictated by behemoth pharmaceutical firms, such as Pfizer intervened

illegally" (id. at page 1).

  Plaintiff now is suing defendant Pfizer Incorporated for $112 million (based upon

plaintiff's calculation of the daily rate for a detained hostage, at an inflation adjusted rate of

$30,000 per day for a total of 1,241 days plaintiff was detained) (id.).  Plaintiff deems his times

incarcerated, once for a prosecution in the District of Utah (U.S. v. Burmaster, No. 2:07-cr-00628, hereinafter referenced by "07cr628") for a total of 506 days and then in the Eastern District of Louisiana (U.S. v. Burmaster, No. 2:13-CR-265, hereinafter "13cr265") for a total 735 days, as periods when he was a "hostage". He was released from the latter incarceration based upon the incompetence to stand trial. (Id.) Plaintiff multiplied $30,000[1] per day by the total 1,241 days to get $37 million, which he trebled under civil RICO, 18 U.S.C. § 1964(c), to come to $112 million (id. at pages 1, 3). Plaintiff complains about how he was arrested and detained in both criminal cases (id. pages at 1, 2). He includes as an exhibit a competency hearing in the Eastern District of Louisiana (id. at page 3, Appx. E), noting that he was diagnosed with "schizoaffective disorder, bipolar type and obsessive-compulsive disorder" (Docket No. 1, Compl. at 3, Appx. E, Tr. at 25, 45). He alleges that, this court found plaintiff incompetent to stand trial and forcibly medicated him with medication such as defendant's Geodon (Docket No. 1, Compl. at 3; Appx. E, Tr. at 48). In the present Complaint, plaintiff also seeks a declaration that plaintiff is competent to stand trial, entry of judgment in his favor for $122 million (trebled under civil RICO), and imposition of lien for that amount upon defendant (Docket No. 1, Compl. at 3).

Plaintiff signed the Complaint with his name, "Severally Mentally Ill and Incompetent Plaintiff" (id. at 3) after stating that due to Eastern District of Louisiana's rulings of incompetence to stand trial "I am extremely mental [sic] ill, incompetent to stand trial and thus 'homeless'" relying only upon the Buffalo post office box as a mailing address (id.). Plaintiff,

---

[1]The rate awarded to the 1979-81 American hostage in Iran by the International Court of Justice, United States v. Iran, [1980] ICJ 1.

however, did not move for appointment of a representative due to an alleged incompetence, cf.
Fed. R. Civ. P. 25(b).  Rule 25(b), however, has been construed to apply only when a party
becomes incompetent during the course of the proceeding, 6 Moore's Federal Practice—Civil
§ 25.20[1], [3] (2018).  Furthermore, incompetence is defined under the law of the litigant's
domicile, id., § 25.20[1]; 4 Moore's Federal Practice—Civil § 17.21 (2018); here, plaintiff is
using a Buffalo post office box and does not allege his current domicile.

*Defendant's Motion to Dismiss*

Defendant, adopting for the purpose of its motion the allegations in the Complaint, noted
that plaintiff had refused to take Zyprexa while in custody in Utah (Docket No. 3, Def. Memo. at
2) and stated that this drug was made by Eli Lilly and not by defendant (id. at 2 n.2).  Plaintiff
claimed that he was unlawfully imprisoned in both the District of Utah and the Eastern District
of Louisiana; hence, the "hostage days" he claims (id. at 2).  Plaintiff "appears to take issue with
the methods employed by the government psychiatrists (whom he identified as members of the
American Psychiatric Association), accusing them of using a 'methodology of "chemical"
problem-solving as dictated by behemoth pharmaceutical firms, such as Pfizer'" (id. at 2-3,
quoting Docket No. 1, Compl. at page 1).  Plaintiff alleged that he had been poisoned with high
levels of toxic heavy metals, "which are correlated to mental health problems" (Docket No. 3,
Def. Memo. at 3, citing Docket No. 1, Compl. at page 2).  The diagnoses during plaintiff's
imprisonment he termed "an imaginary disease fabricated and 'cured' by . . . Pfizer" (Docket
No. 3, Def. Memo. at 3, quoting Docket No. 1, Compl. at page 3).

Defendant first argues that the Complaint should be dismissed for insufficient process
and service of process under Rule 4 (Docket No. 3, Def. Memo. at 3-7).  Plaintiff sent a letter to

Pfizer's general counsel apparently attempting to serve the Complaint (id. at 4). He sought to treat that letter as the Summons (id.). Defendant points to the omissions in that letter to preclude it from being a Summons under Rule 4(a)(1) (id. at 4-5). Defendant also complains that it was not properly served by plaintiff in mailing what purported to be the Complaint (id. at 5) since service by mail is not authorized upon a corporation under Rule 4(h) or under New York procedures as adopted by Rule 4(e) (id. at 5-7). That mailing, however, only contained the first three pages of the Complaint and not the appendices (id. at 7).

Next, defendant argues that the Complaint fails to state a claim (id. at 7-11). The Complaint does not expressly state the legal basis for plaintiff's claims, so defendant presumes (as does this Court) that plaintiff alleges claims under 42 U.S.C. § 1983 and civil RICO, 18 U.S.C. § 1964(c) (id. at 8). The Complaint also does not allege the defendant Pfizer caused any harm to plaintiff (id. at 8). As for the assertion that a "pharmaceutical behemoth" like Pfizer dictated the methodology Government psychiatrists used, defendant argues that this is conclusory and should not be entitled to the assumption of being true (id. at 9), see Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009), rev'g Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007). Plaintiff does not allege that defendant "was the entity that diagnosed him, incarcerated him, or found him incompetent, so as to cause him harm" (id.). Even the forced medication with Pfizer's medication, Geodon, during the Eastern District of Louisiana imprisonment, defendant argues that it was the so-called "government quacks" (Docket No. 1, Compl. at page 3) that prescribed and not Pfizer, assuming that he was diagnosed (Docket No. 3, Def. Memo. at 9). In the transcript from the competency hearing, Dr. Bryon Herbel testified that "he might theoretically recommend" Geodon for plaintiff but plaintiff made it very clear that he was not going to accept

recommendations for taking any medication (Docket No. 3, Def. Memo. at 9 (emphasis in

original), quoting Docket No. 1, Compl. Appx. E, at 47-48).  Defendant urges to this Court not to

accept facts plaintiff alleges that are contradicted by documents (Docket No. 3, Def. Memo. at

10, citing Allen v. Wachovia Dealer Fee, No. 07CV6315, 2009 WL 2156972, at *2 n.2

(W.D.N.Y. July 15, 2009) (Telesca, J.) (pro se Complaint)).

As for plaintiff's purported RICO claim, defendant argues that plaintiff does not allege a

RICO violation (two RICO predicate acts, maintenance of an "enterprise") (id. at 10-11; see also

id. at 11 n.3 (Pfizer cannot be a RICO defendant and a RICO enterprise in the same action)).

Finally, defendant contends that this action is commenced in the wrong district (id. at 12-

13).  Plaintiff failed to show that a substantial part of the events occurred in the Western District

of New York or allege that defendant Pfizer resides in the District (id. at 12).  Defendant is

headquartered in New York, New York, in the Southern District of New York; hence, the proper

venue for this action is in the Southern District (id. at 13).  Even if leave were given to amend for

this pro se litigation, defendant argues that an Amended Complaint would not succeed and this

action should be dismissed (id. at 13-14).

Well before the March 2, 2018, deadline, plaintiff initially responded with a letter and

attachments (Docket No. 9), raising arguments similar to those he makes in a pending United

States Court of Federal Claims action he commenced, Burmaster v. United States,

No. 17CV1903 (Docket No. 9, Pl. cover letter, Feb. 11, 2018, at 1, hereinafter "Pl. Letter").

First, he claims that limited or lack of jurisdiction was not invoked in his criminal prosecutions

but are invoked in this action (id.).  Next, his claim is "simple, and its economic basis is

international law," here per day rate for the 1979 Iranian hostages (id. at 1, 2 (letter to Clerk

of Court, Court of Federal Claims at 1)); the claim may be increased because the Government

allegedly "killed" plaintiff's patent application (id. at 1). Plaintiff then faults defendant for not

citing international law (id.); the Department of Justice's declaration of incompetence

(presumably plaintiff's in his criminal trial) "was never validated internationally" (id.). He

argues that the federal courts' "reliance on advocating unwanted chemicals directed towards

humans is despicable" (id.). Before the Court of Federal Claims, he finds "very repugnant and

despicable (but consistent) that US Federal Judges with social science undergraduate degrees

advocate the use of unwanted chemicals directed at humans per the pharmaceutical-medical

industrial complex doctrine" in his prosecutions based upon "various quacks' subjective opinion

[sic]" (id., at 3 (letter to Clerk of Court, Court of Federal Claims at 2)).

He concludes that he was "assembling a team of multinational lawyers to argue my cases

at The Hague, where the financial award would be much higher" (id. at 1). Plaintiff argued to

the Court of Federal Claims that dismissal of his action there would result in him commencing an

action before the Court of International Justice in The Hague "which would be must costlier for

the Defendants" (id. at 3 (letter to Clerk of Court, Court of Federal Claims at 2)).

He attaches various documents in support of his international intellectual property assets,

and one case in which he prevailed before the Blackfriars Crown Court when he proceeded to

defend himself pro se (id., Appx. J, K, M, L).

Plaintiff addressed and mailed this response from Cairo, Egypt, and asked that documents

be sent to him at his business office in Milwaukee (id. at 1) as he requested in the Court of

Federal Claims (id. at 3 (letter to Clerk of Court, Court of Federal Claims at 2)).

In reply to this letter, defendant argues that the Complaint merely alleges plaintiff's illegal detention as performed by parties other than Pfizer (Docket No 10, Def. Reply Memo. at 2). Defendant notes that plaintiff does not refer to 42 U.S.C. § 1983 or the RICO statute, the two putative bases of federal subject matter jurisdiction for this case (id.). Instead, plaintiff relies upon international law; defendant argues that plaintiff fails to explain "how an ICJ [International Court of Justice] action between two nation-states can create a private right of action against a company" or state a claim against a company that did not detain plaintiff (id. at 2, 3). Plaintiff instead appears to assert claims against the United States and not against Pfizer; his response to this motion does not allege improper conduct by Pfizer or attempt to explain the Complaint's passing references to Pfizer and how it states a claim against the company (id. at 2). In reply, defendant argues that plaintiff has not addressed the procedural deficiencies (in not serving a summons, or serving properly under Rule 4, or address the appropriate venue for this action if it survives the initial procedural deficiencies) (id. at 1, 3).

The deadline for responses was March 2, 2018 (Docket No. 8). On March 14, 2018, plaintiff filed a response specifically addressing defendant's pending motion (Docket No. 11). Briefly, in the cover letter to this submission (id. at page 4 of 5), plaintiff summarized defendant's arguments for dismissal. Plaintiff claims that defense counsel conceded that plaintiff was a hostage during his incarceration (id.). Plaintiff now argues that he properly served defendant by mailing the Complaint to its general counsel, but does not cite any rule or other authority for the method of service he used (or that he did the service himself) (id. at 1). He then states his civil RICO racketeering contentions (id. at 1-2), based upon his second criminal prosecution and detention, concluding that these events constitute a pattern of racketeering that

entitles him to treble damages under RICO (id.).  Plaintiff cites to events in the second Louisiana prosecution (see id.), but does not mention incidents from this first Utah prosecution.  Plaintiff then asserts the manufacture of Geodon by defendant and the Eastern District of Louisiana's deference to the American Psychiatric Association in competence determinations somehow states a claim against defendant (id. at 2).  He cites to material he submitted with his Writ of Certiorari (id., citing Docket No. 1, Compl. App'x D, Burmaster v. United States, et al., Writ of Cert., App'x I, J, at 74-76, 77-79).  Plaintiff appears to argue that defendant, in manufacturing Geodon and representing that it can cure "imaginary diseases," somehow violated plaintiff's civil rights (id. at 2).  Plaintiff denies defendant's venue objection, contending that defendant has not asserted the inability to obtain a fair trial in this District (id. at 3), citing the change of venue granted in the criminal prosecution United States v. McVeigh (moving case from Oklahoma City to Denver) (id.).  Plaintiff, however, fails to cite authority for venue in a civil action as he contends here and does not address the venue provision of 28 U.S.C. § 1391(b).

In plaintiff's March 9, 2018, letter (filed on March 22, 2018, Docket No. 12), plaintiff argues that defendant was a co-conspirator in his international kidnapping "by the hired thugs at the US Department of Justice" (id.).  The attachment addressed to the United States District Court for the District of Minnesota lists this case as one of five cases[2] pending in districts and other federal courts across the country against the so-called co-conspirators in the RICO conspiracy (id., D. Minn. letter at 3).

---

[2]Burmaster v. United States (Ct. Fed. Claims); Burmaster v. Eli Lilly Inc. (N.D. Ohio); Burmaster v. Herman, et al. (E.D. Wisc.); Burmaster v. American Psychiatric Ass'n (D. Minn.).

9

**DISCUSSION**

I.    Applicable Standards

    A.    Venue

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) through (b)(6) (Docket No. 3, Notice of Def. Motion to Dismiss). Defendant asserts improper venue under Rule 12(b)(3). Proper venue for an action in federal court is either in the judicial district in which any defendant resides; the district in which a substantial part of the events or omissions giving rise to the claim occurred; or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," 28 U.S.C. § 1391(b)(1)-(3). Residency of a corporation, such as defendant, for venue purposes would be in any district of a state (such as New York which has multiple districts) in which it is subject to personal jurisdiction if that district were considered a state, 28 U.S.C. § 1391(d).

    B.    Service of Process and Sufficiency of Process

Under Rule 12(b)(4) and (b)(5), defendant challenges the sufficiency of the process and service of process against it. The burden of proof regarding the insufficiency of process or the failure of proper service is upon the challenger, here the defendant, see 2 Moore's Federal Practice—Civil § 12.33 (and case cited at note 5) (2018). Rule 12(b)(4) addresses the form of the process (that is, the summons) while Rule 12(b)(5) addresses the method of service, id. Rule 4 of the Federal Rules of Civil Procedure sets forth the method for serving summonses, providing that the party is not to serve for himself, Fed. R. Civ. P. 4(c)(2). While a plaintiff's counsel may serve process, since she is not a party, see 1 Moore's Federal Practice—Civil § 4.70

(2018) (and cases cited at note 3), a party proceeding <u>pro se</u> cannot serve his own process, <u>id.</u>;

Fed. R. Civ. P. 4(c)(2).  Courts have dismissed cases for defective service where <u>pro se</u> plaintiffs

attempted to serve their own process, <u>e.g.</u>, <u>Clarke v. McMurry</u>, No. 17-cv-3664-WSD, 2017 U.S.

Dist. LEXIS 201445, at *6 (N.D. Ga. Dec. 7, 2017); <u>May v. Woolfolk</u>, No. 2:16-cv-85-NAB,

2016 U.S. Dist. LEXIS 172696, at *5 (E.D. Mo. Dec. 14, 2016) (plaintiff is not permitted to

serve process himself, instead he either finds a qualified person to do so or moves the Court to

effect service through the Marshal Service); <u>see also</u> <u>McGann v. New York</u>, 77 F.3d 672, 675

(2d Cir. 1996) (per curiam) (affirming dismissal of case after district court instructed plaintiff on

service).  If a plaintiff applies for the Court to effect service, one district court held that the

plaintiff "must explain to the Court, in writing, what steps he took to locate a qualified person to

serve process on the complaint, and why he was unsuccessful," <u>May</u>, <u>supra</u>, 2016 U.S. Dist.

LEXIS 172696, at *5-6.

      Rule 4(h) sets forth the method for serving a corporation, with service by the manner of

serving an individual in a judicial district in this country under Rule 4(e)(1), Fed. R. Civ. P.

4(h)(1)(A), delivery of a copy of the summons and complaint to the officer or other agent of the

corporation, Fed. R. Civ. P. 4(h)(1)(B).  Rule 4(e)(1) sets forth the basis for serving an individual

found within the United States, either by following state law for service of summons, Fed. R.

Civ. P. 4(e)(1), or delivering a copy of the summons and complaint to the individual personally,

leaving at their dwelling, or delivering a copy to an authorized agent, Fed. R. Civ. P. 4(e)(2)(A)-

(C).  In New York, a corporation is personally served by delivering the summons upon an

officer, director, managing or general agent, cashier or assistant cashier or other agent authorized

to receive service, N.Y. CPLR 311(a)(1); <u>see also</u> N.Y. Bus. Corp. L. § 306 (service of process

11

through an authorized agent).  If service by this method is impracticable after 120 days, plaintiff

can move to serve "in such manner, and proof of service may take such form, as the court, upon

motion without notice, directs," N.Y. CPLR 311(b).  New York has an alternative process for

serving the summons and complaint by mail, provided it also includes a Statement of Service by

Mail and Acknowledgment of Receipt by Mail, N.Y. CPLR 312-a.

    C.    Failure to State a Claim

    Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  As the Supreme Court held in Bell

Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), a Complaint must be dismissed pursuant to

Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting

longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med.

Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007).  To

survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a

right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra,

2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Iqbal, supra, 556 U.S. 662,

> "To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim to relief that is plausible on its face.'
> [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.  Id., at 556 . . . .
> The plausibility standard is not akin to a 'probability requirement,' but it asks
> more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where
> a complaint pleads facts that are 'merely consistent with' a defendant's liability, it
> 'stops short of the line between possibility and plausibility of "entitlement to
> relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits but not supported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).  Defendant as movant has the burden of proof that no claim has been stated, 2 Moore's Federal Practice—Civil § 12.34[1][a].

As an overlay to the various contentions here, as with pleadings, the filings of a pro se plaintiff in response to a motion to dismiss are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).  Plaintiff's second responding papers to defendant's motion (Docket No. 11) was late by twelve days from the deadline for responding papers (see Docket No. 8).  Plaintiff did not seek an extension of time to respond and, despite the best efforts of his Milwaukee office (cf. Docket No. 11, Pl. Response at 4, cover letter to Court Clerk), the response is late.  For that reason, this Court should disregarded it.  Given plaintiff is proceeding pro se and apparently working remotely (at times outside of this country), however, this Court considered all arguments he made regardless of their timeliness, see Grant v. Davis, No. 11CV1012, 2018 U.S. Dist. LEXIS 13493, at *2 n.2 (W.D.N.Y. Jan. 24, 2018) (Roemer, Mag. J.) (considering pro se plaintiff's late responses to motion for summary judgment).

13

For a civil RICO claim, plaintiff has to allege injury in his business or property due to violation of 18 U.S.C. § 1962, causation of the injury by the violation, Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990), and entitled to treble damages, 18 U.S.C. § 1964(c).  Treble damages is available if plaintiff can show that the RICO violation was the proximate cause of their injury to business or property, Sperber v. Boesky, 672 F. Supp. 754, 757-58 (S.D.N.Y. 1987), aff'd, 849 F.2d 60 (2d Cir. 1988).  As discussed below, this Court under its Local Civil Rules also requires a plaintiff to file with his or her Complaint alleging a civil RICO claim a RICO Case Statement, W.D.N.Y. Loc. Civ. R. 9 (see also Docket No. 8, Order of Jan. 31, 2018, warning plaintiff of effect of Local Civil Rule 9 on his civil RICO claim).

II.    Service

As defendant notes, plaintiff does not refute the contention that he failed to follow the mandates of Rule 4 in serving defendant.  Plaintiff argues he properly served defendant by mailing to defendant's general counsel himself (see Docket No. 11, at 1).  Defendant argues that such service is defective as a mailing of a pleading to a corporation contrary to the procedure in Rule 4(h) or (e)(1) (Docket No. 3, Def. Memo. at 4-5), which essentially is the procedure for serving a corporation under the New York CPLR.  Under the CPLR, there is a method for mailing summons and process as an alternative to personal delivery, N.Y. CPLR 312-a.  Plaintiff, however, needed to include a Statement of Service by Mail and Acknowledgment of Receipt by Mail, N.Y. CPLR 312-a.  Plaintiff acknowledged in his cover letter to the Court Clerk that he mailed his three-page Complaint, list of the Appendix, and cover letter to defendant's general counsel (Docket No. 2).  First, that letter is not a proper Summons, cf. Fed. R. Civ. P. 4(a) (contents of a Summons), second, it does not contain a Statement of Service by Mail to

constitute service under CPLR 312-a. These could be corrected with a new service pursuant to the rules (Rule 4 or CPLR 311 or 312-a) but there is a more fundamental objection to the manner of plaintiff's service.

A party, even one proceeding <u>pro se</u>, cannot serve his own process, Fed. R. Civ. P. 4(c)(2). The Advisory Committee in 1980 explained that Rule 4(c) was to generally authorize service of process regardless of the type of defendant (and method of service) served, Fed. R. Civ. P. 4, Adv. Comm. Note (1980). This federal rule does not have included an exception if state law procedure is used, <u>but see</u> 4A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, <u>Federal Practice and Procedure</u> (Civil 4th) §§ 1089.1, text at n.12 (2018) ("[i]f the relevant state law does permit service by a party or minor, Rule 4(e)(1) and not Rule 4(c)(2) authorizes service by such an individual pursuant to state law in a federal court action"), 1092 text at n.16. Cases relying upon state procedure for service, even if by the plaintiff, found that the state rules did not authorize plaintiff to serve, <u>Follum v. North Carolina State Univ.</u>, No 5:08-CV-526-FL, 2009 WL 2869927, at *1-2 (E.D.N.C. Sept. 2, 2009); <u>Muench v. Chevy Chase Bank, F.S.B.</u>, No. 3:07-CV-104, 2007 WL 2815638, at *1 (N.D. W.Va. Sept. 25, 2007) (recognizing alternative method for service under West Virginia rules, but holding those rules did not provide for party service). Looking at New York Civil Practice Law and Rules for service by mail (CPLR 312-a) or service of a corporation, neither provision says who can serve process. CPLR 2103(a) states, "Except where otherwise prescribed by law or order of court, papers may be served by any person <u>not a party</u> of the age of eighteen years or over." This provision is similar to Federal Rule 4(c)(2), where both restrict service to nonparty adults.

How, then, can a pro se party serve his process?  A pro se plaintiff could hire a process server.  Although plaintiff here claims he is homeless, he did pay the $400 filing fee (see Docket No. 1, Compl. at 3; Docket Entry, Dec. 12, 2017) and has not moved for leave to proceed in forma pauperis.  From plaintiff's own submissions, he admits that has an international business with offices in Milwaukee and operations in Cairo from which he sent his last response (see Docket No. 9, Pl. Letter), as well as Doha, Qatar (Docket No. 11, Pl. Response at 3) and other Mid East locations (see also Docket No. 12, written from Beirut).  Thus, he could afford to hire a professional process server to serve his Summons and Complaint correctly at least for Rule 12(b)(5) purposes.  Alternatively, under Rule 4(c)(3), plaintiff as a pro se litigant could apply to the Court to have the United States Marshal serve his process on his behalf.  Unlike impoverished litigants granted in forma pauperis status under 28 U.S.C. § 1915 who (once that status is acknowledged) automatically are entitled to service by the United States Marshal Service, plaintiff here would not have a right to such service.  Rather, he would first have to apply for it, see Carl v. City of Yonkers, No. 04 Civ. 7031, 2008 U.S. Dist. LEXIS 102489, at *4 n.5 (S.D.N.Y. Dec. 18, 2008); see also Jordan v. Forfeiture Support Assocs., 928 F. Supp. 2d 588, 600 (E.D.N.Y. 2013).  Since plaintiff is no longer incarcerated (cf. Docket No. 1, Compl. at 1) which may have also been grounds for service by the United States Marshal, he is not entitled to rely upon his former inmate status to gain this service, see Frank v. Harrison, Civil Action No. 15-0442-SDD-EWD, 2017 U.S. Dist. LEXIS 114982, at *5 (M.D. La. Apr. 17, 2017) (Wilder-Doomes, Mag. J.) (quoting Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987)).

Defendant is correct that plaintiff has deficiencies in service of the Complaint here, including not having a formal summons (violating Rule 12(b)(4)) and by serving the process

himself and by mail but not in full compliance with CPLR 312-a (violating Rule 12(b)(5)).
Plaintiff does not address the lack of a formal Summons (<u>cf.</u> Fed. R. Civ. P. 4(a)) or compliance
with an authorized method for service by mail. Defendant also is correct that what it was served
was not the complete Complaint and it was served in a manner (mailing to lawyer's office) not
recognized for service under Rule 4. Plaintiff admitted in his cover letter that he purported to
serve three pages of the Complaint and a list of Appendix (Docket No. 2) rather than attach the
Appendix with the served Complaint. On this basis, defendant's motion (Docket No. 3) to
dismiss should be **granted**.

These defects, however, could be cured if leave were granted for plaintiff to serve a
proper Summons and Complaint either by a process server he retains or upon his application for
this Court to effect service for him. The easier answer would be to allow plaintiff a "do over"
and have him serve again the complete Summons and Complaint, either by a professional
process server or (upon granted application) by the Marshal Service. There is, however, a deeper
issue, whether plaintiff states a claim at all to justify going through these procedures. Before
addressing this fundamental issue, this Court needs to consider one additional procedural item.

III.    Improper Venue

Defendant alternatively argues that if this case is not dismissed, it is not properly venued
in the Western District of New York. Rather, if heard at all, defendant concludes that this case
should be in defendant's home district, the Southern District of New York (Docket No. 3, Def.
Memo. 13 & n.5). Defendant is incorporated in Delaware and headquartered in New York, New
York (<u>id.</u> at 13).

17

Pertinent here, there are two possible bases for venue. The parties are not claiming that there is no district that could hear this case to invoke 28 U.S.C. § 1391(b)(3) for venue. There is a venue in which this action could be brought, so that third ground for venue, id., is not applicable.

In one sense venue is determined by where defendant resides, 28 U.S.C. § 1391(b)(1), and not where plaintiff resides or plaintiff's desired forum. If the districts in this state were viewed, for venue purposes, as separate jurisdictions as required under 28 U.S.C. § 1391(d), defendant resides in the Southern District of New York and there is no proof of defendant's presence in the Western District of New York.

Another possible basis for venue is where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated," id. § 1391(b)(2).

Plaintiff's sole connection with this District is his post office box in Buffalo, New York (Docket No. 3, Def. Memo. at 12-13). This Court takes judicial notice that the letter purported to be Summons in this case to the Court Clerk was postmarked from Barcelona, Spain (Docket No. 2). One of plaintiff's own responses to this motion (Docket No. 9) was addressed from Cairo, Egypt (id. at 1), and he sought future Court correspondence be sent to his business address in Milwaukee (id.; see also Docket No. 11, Pl. Response at 4; Docket No. 12, Pl. Mar. 9, 2018, letter at 1), while his later response (Docket No. 11) was sent from Doha, Qatar, via plaintiff's office in Milwaukee (id. at 3, 4). The Court Clerk acted on the request in the March 9 letter and changed plaintiff's address to his Milwaukee office. Thus, the sole vestige of any connection to this District (the post office box plaintiff used initially in this city) was eliminated.

18

Plaintiff states no connection to this District save a post office box acquired therein and then in effect abandoned for future correspondence by this Court to plaintiff.  Plaintiff has not argued any connection between this case and this District or shown that the "substantial part of the events or omissions giving rise" to his claim occurred here.  He merely believes that he can obtain a fair trial from an impartial jury in this District (Docket No. 11, Pl. Response at 3; Docket No. 12, Pl. Mar. 9, 2018, letter at 1); the same fair, impartial trial he could obtain in any other district that would be the proper forum for this case.  Unlike the plaintiff business in Easyweb Innovations, LLC v. Facebook, Inc., 888 F. Supp. 2d 342, 349 (E.D.N.Y. 2012), plaintiff's choice of venue here is not entitled to deference because plaintiff has not shown that the Western District of New York is his home district.

The other basis for venue is if the "substantial part of the events or omissions giving rise to the claim occurred" in that district, 28 U.S.C. § 1391(b)(2).  As defendant notes, none of the events in this case occurred in this District; rather, the events occurred either in the districts in which plaintiff faced criminal prosecution (the Eastern District of Louisiana or the District of Utah) or in the Southern District of New York (Docket No. 3, Def. Memo. at 13; see also Docket No. 10, Def. Reply at 3) where defendant is headquartered.  None of events alleged occurred in the Western District of New York.  Aside from a post office box and plaintiff's filings in this case, there appears to be no other connection between this case and this District.

Defendant's motion to dismiss for improper venue (Docket No. 3) should be **granted**. As with service, plaintiff could correct this deficiency in venue if he commenced this action in the Southern District of New York or in a district where a substantial part of the events occurred (such as the Eastern District of Louisiana or the District of Utah, or the other districts plaintiff

was held during the pendency of the two prosecutions), assuming commencement now would be timely.  Also as with service, would such a change in venue be futile if plaintiff files the same Complaint as here but still fails to allege a claim?  Rather than have the plaintiff commence a new action in the Southern District of New York (or elsewhere) and have that court wrestle with the case, the next section discusses whether this action should be dismissed now for failure to state a claim.

IV.    Failure to State a Claim

    A.    Substance

The Complaint does not allege any harm to plaintiff caused by defendant Pfizer.  The use of Pfizer's products (if any) were by unnamed third parties, assuming such use occurred.  The Utah imprisonment involved a drug, Zyprexa, manufactured by another drug company (Eli Lilly) and not defendant.  As for the Louisiana imprisonment, plaintiff alleges that so-called "quacks" found plaintiff incompetent to stand trial and demanded that he be medicated forcibly with medicines such as defendant's Geodon (Docket No. 1, Compl. at 3; Appx. E, Tr. at 48).  But Dr. Herbel repeatedly testified (in papers plaintiff attached as an exhibit to his Complaint) that plaintiff refused medication and that Geodon was an alternative medication Dr. Herbel would have recommended had plaintiff been more cooperative (id., Appx. E, Tr. at 48, 47-48).  Dr. Herbel then stated that plaintiff refused any recommendation regarding medication (id.).  There is no evidence that plaintiff was actually medicated with defendant's Geodon or any other medication manufactured by defendant while in custody for the Eastern District of Louisiana prosecution.

The fact that defendant manufactures a drug (cf. Docket No. 11, Pl. Response at 3) by itself does not state a claim for violating plaintiff's civil rights.  First, plaintiff denies taking Geodon.  He merely alleges that so-called "quacks" found plaintiff incompetent to stand trial and demanded forced medication of plaintiff with Geodon (Docket No. 1, Compl. at 3).  Thus, it is unclear how defendant harmed plaintiff for a drug (defendant manufactured) plaintiff did not take.  Second, plaintiff's period of incarceration (in particular, the Louisiana prosecution, since there is no mention of defendant's products being used or threatened to be used upon plaintiff during the Utah prosecution) was due to the actions of other parties (the United States or plaintiff himself) and not defendant.  While this Court may not have training in chemical engineering (cf. Docket No. 11, Pl. Response at 2), plaintiff's responses to defendant's motion and the manner of conducting this action clearly indicate that plaintiff lacks legal training.

In an effort to identify any potential claim this pro se plaintiff may have, this Court reviewed the court dockets of plaintiff's two prosecutions, in Utah and the Eastern District of Louisiana.  In the District of Utah prosecution, defendant initially was detained after his arrest (07cr628, Docket No. 4) but plaintiff moved for reconsideration of detention (07cr628, Docket No. 23).  On January 3 and 4, 2008, the Magistrate Judge, noting that plaintiff was to meet with a psychiatrist regarding medication to be prescribed, modified plaintiff's detention and released him on standard and special conditions (07cr628, Docket Nos 26, 27, 28).  One of those conditions (among the standard conditions) required that plaintiff agree to undergo psychiatric treatment by taking mental health medication as prescribed (07cr628, Docket No. 28).  On March 3, 2008, the court held a status conference where the court heard about the condition that plaintiff take all medication as prescribed and the court ordered plaintiff detained and remanded

21

to the custody of the United States Marshal Service (07cr628, Docket No. 34; see also Docket No. 1, Compl., Appx. B), with plaintiff committed to custody on March 4, 2008 (07cr628, Docket No. 38).  Plaintiff now alleges that his first "hostage" detention (of 506 days) started at this time (Docket No. 1, Compl. at page 1).  The court then ordered plaintiff to undergo psychiatric treatment (No. 07cr628, Docket No. 43).  On April 17, 2009, the court held a further status conference and the discussion was whether plaintiff was to be forcibly medicated (07cr628, Docket No. 63).  The "hostage" situation ended on July 21, 2009, when that prosecution was dismissed (Docket No. 1, Compl. at page 1; No. 07cr628, Docket No. 77; see also 07cr628, Docket No. 79).

In the Eastern District of Louisiana, plaintiff was arraigned on January 5, 2016, and remanded (13cr265, Docket No. 15) and plaintiff was detained on January 7, 2016 (13cr265, Docket No. 18).  Plaintiff's competency hearing was held on October 12, 2016 (13cr265, Docket No. 46; Docket No. 1, Compl., Appx. E).  On October 21, 2016, the court declared plaintiff incompetent to stand trial and committed him to the custody of the Attorney General for up to four months "in order to determine whether [plaintiff] may attain the capacity to permit the proceedings to go forward in the foreseeable future" (13cr265, Docket No. 49).  During his detention, plaintiff was ordered to have a psychiatric evaluation at the Federal Medical Center, Butner, North Carolina (13cr265, Docket No. 60).  The Indictment was dismissed on August17, 2017 (13cr265, Docket No. 68), and plaintiff was released on September 7, 2017 (Docket No. 1, Compl. at pages 1, 2, Appx. H).  Thus, he claims that he was detained illegally for an additional 735 days (id. at 1).

In sum, plaintiff was detained in both criminal cases for 1,241 total days alleged because he <u>refused</u> to take psychotropic medication such as manufactured by defendant. Had plaintiff taken the medication recommended in, for example, the Louisiana prosecution, he may have been deemed competent to stand trial and possibly reduced his pretrial detention period by a speedy prosecution. The decision to take the medication was plaintiff's or upon order of parties not in this action, the district courts in Utah or Louisiana and the United States Marshal Service who had custody of plaintiff. For purposes of this case, defendant had no role in this. If there were any role for the defendant in this case it would have been providing medication <u>had it been</u> <u>ordered for plaintiff to take</u> (or even prescribed to him). Plaintiff has not alleged that he was treated with defendant's medication; he only alleges that one of defendant's medicine was recommended but plaintiff denied that recommendation.

This Complaint therefore **fails to state a claim**; defendant's motion (Docket No. 3) to dismiss should be **granted** and this action dismissed. Given this recommendation, plaintiff need not re-serve this action properly or commence it in the Southern District of New York.

> B.      Plaintiff's Initial Response (Docket No. 9)

Initially, all this Court (and defendant) had was plaintiff's response letter of February 11, 2018, in response to the motion to dismiss (Docket No 9) wherein plaintiff recited arguments he raised in his pending action in the United States Court of Federal Claims. He argued that the contentions in the Federal Claims case were similar to those presented here. Some comment on plaintiff's initial response (Docket No. 9), in addition to the obvious that the Federal Claims action is distinct from the case against Pfizer alleged here. First, the civil and criminal actions are separate. The criminal prosecutions occurred in two other districts and no prosecution is

pending before this Court. Plaintiff as a criminal defendant would have raised the lack of jurisdiction or its limitations in a criminal prosecution in those prosecutions. Jurisdiction in this civil case is a different matter. This point was probably addressed to the contention of limited jurisdiction of the Court of Federal Claims rather than this Court's subject matter jurisdiction (cf. Docket No. 9, Pl. Letter at 2 (letter to Clerk of Court, U.S. Court of Federal Claims, at 1)). Pertinent to this action, defendant never invoked subject matter jurisdiction as a defense. Defendant does assert that this case is not properly venued in this Court (rather, it should be heard—if at all—in the Southern District of New York). Venue also differs in civil as opposed to criminal cases (compare 28 U.S.C. § 1391 with Fed. R. Crim. P. 18 (unless statute or rules permit otherwise, Government must prosecute an offense in the district where the offense was committed)). Defendant also claims that the Complaint does not state a claim but defendant does not argue that failure based on jurisdictional grounds.

Whether plaintiff has a basis under international law for his claims is not material since he presumably alleges domestic law claims (violation of his civil rights under the United States Constitution and civil RICO). He has not invoked internationally law, save the threat of commencing action in an international tribunal. Plaintiff has not sought to amend the Complaint to add international law claims or, for that matter, interference with his right to apply for patents (if applicable here). Plaintiff has not attempted to commence an action anywhere against this defendant alleging violations of international law. Since plaintiff has not made an international law claim, this defendant need not argue international law to prevail.

Next, the decision by the Justice Department regarding plaintiff's competence to proceed with criminal prosecutions is only the predicate for this civil action. Questions of plaintiff's

24

competence and the orders to medicate him so he might be competent to stand trial in the criminal cases lead to this action.  Whether the Justice Department's determination (or that of the District Courts wherein plaintiff was prosecuted) meets international law standards is not applicable here.  Defendant Pfizer has no role in that determination and the competency findings of sibling jurisdictions is not before this Court.

The federal Court's reliance upon medication of criminal defendants believed to be incompetent to stand trial or proceed (id., Pl. Letter at 1) is the closest to plaintiff's claims in this case.  The determination process of plaintiff's competence to stand criminal trial was under 18 U.S.C. § 4241.  The district court, after a hearing, "finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General," id. § 4241(d).  The Attorney General then would hospitalize that defendant for a reasonable period of time "not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward," id. § 4241(d)(1).  Congress also authorized this Court to release a criminal defendant on conditions including compelling the defendant to "undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose," 18 U.S.C. § 3142(c)(B)(x), as was ordered in the District of Utah prosecution, Burmaster, supra, 07CR628, Docket No 28.  This hospitalization or release upon condition of defendant seeking medical, psychological, or psychiatric treatment is aimed at getting an

25

afflicted defendant in a condition that he or she could defend himself or herself. The Supreme

Court in <u>Sell v. United States</u>, 539 U.S. 166 (2003), recognized that

> "the Constitution permits the Government involuntarily to administer
> antipsychotic drugs to a mentally ill defendant facing serious criminal charges in
> order to render that defendant competent to stand trial, but only if the treatment is
> medically appropriate, is substantially unlikely to have side effects that may
> undermine the fairness of the trial, and, taking account of less intrusive
> alternatives, is necessary significantly to further important government trial-
> related interests,"

<u>id.</u> at 179.

This case, however, alleges that defendant, as a supplier of antipsychotic drugs, somehow

injured plaintiff during his criminal prosecutions in the determination of his competence.

Plaintiff was never administered antipsychotic drugs, or antipsychotic medication manufactured

by defendant; instead, he presumably claims that the "pharmaceutical-medical industrial

complex" (including defendant) conspired with the Government to medicate defendants accused

(as he was) of being incompetent to stand trial. Whatever the merits of involuntary medication,

absent an allegation of such medication being applied to plaintiff and the source of that

medication from defendant, involuntary medication is not a claim before this Court. Even if that

claim were alleged here, this defendant did not administer the medication; at most, it furnished

psychotropic drugs to others to administer.

Finally, he invokes retention of "a team of multinational lawyers to argue" his cases

(Docket No. 9, Pl. Letter at 1). Whether plaintiff continues <u>pro se</u> or retains counsel in this case

does not address the issues before this Court in defendant's present motion—whether plaintiff

has stated a claim, whether he commenced it properly, or whether he commenced it in the proper

venue.  If plaintiff wishes to retain counsel, he is more than free to do so; counsel, in fact, may assist in the prosecution of this claim.

Plaintiff's response to defendant's present motion to dismiss in copying arguments made to another federal court in what he deems a "very similar" lawsuit (cf. Docket No. 9, Pl. Letter at 1) should not prevail.  The cases may be similar, but such similarity is not clear to this Court. The Federal Claims case is against the United States, presumably for the false imprisonment of plaintiff in Utah and Louisiana.  This case is against a pharmaceutical manufacturer for medications that plaintiff has not alleged were used against him.  The arguments plaintiff asserts in the Court of Federal Claims case have little pertinence to defendant Pfizer's arguments in its pending motion.  Plaintiff's gripe is against the United States, the potential user of psychotropic drugs and not a potential supplier of those drugs (see also Docket No. 10, Def. Reply Memo. at 3).

C.    RICO Case Statement

First, as defendant notes (Docket No. 3, Def. Memo. at 10-11; Docket No. 10, Def. Reply Memo. at 2), the Complaint fails to state a RICO enterprise or at least two predicate acts that would state a civil RICO claim under 18 U.S.C. § 1964(c).  Absent civil RICO, there is no basis to treble plaintiff's damages (assuming plaintiff is entitled to damages or the correct measure of his damages is the "hostage" rate from the Iran hostage situation of 1979-81).

Under this Court's Local Civil Rules and in addition to the allegations in the Complaint, a party asserting a RICO claim needs to submit a detailed RICO Case Statement, W.D.N.Y. Loc. Civ. R. 9 (see also Docket No. 8, Order of Jan. 31, 2018).

The importance of a detailed RICO Case Statement is apparent from the allegations in the Complaint here.  Plaintiff only makes conclusory claims and cites to RICO (to claim treble damages) without alleging the parameters of a RICO enterprise or racketeering and related offenses.  If the Complaint is properly understood, plaintiff apparently merely charges that pharmaceutical companies conspired with the Department of Justice to use dangerous psychotropic drugs for those accused of being incompetent to stand trial (such as plaintiff).  In his second response (Docket No. 11, Pl. Response at 1-2), plaintiff argues the facts of his criminal prosecution and detention as parts of his racketeering claim but fails to mention any role defendant had in the asserted racketeering acts.  He fails to assert how defendant (and not the United States or the Department of Justice) was involved or assert actual elements of a civil RICO claim.  Nevertheless, this Court has to speculate as to the racketeering activities alleged in plaintiff's civil RICO claim for treble damages.  Failure to file a RICO Case Statement by itself is also grounds for dismissal of this action under Local Civil Rule 9.  At a minimum, for plaintiff's civil RICO claim, defendant's motion to dismiss (Docket No. 3) should be **granted** on the further ground of the absence of a RICO Case Statement.  Again, a simple response to this would be allow plaintiff time to file such a RICO Case Statement.  This Court advised plaintiff early in this case of the obligation to file a RICO Case Statement and the risk of dismissal of the RICO claim if the statement was not filed (Docket No. 8, Order of Jan. 31, 2018, at 2) and he has not done so.

Given the recommendations above, either that plaintiff fails to state a claim under civil rights or civil RICO, allowing plaintiff to file a civil RICO Statement would be futile.  If, however upon objection, plaintiff somehow alleges a civil RICO claim, the case would be

28

properly venued in the Southern District of New York and would be governed by the local rules of that court regarding civil RICO claims.

## CONCLUSION

Based upon the above, it is recommended that defendant's motion to dismiss the Complaint (Docket No. 3) be **granted**.

A copy of this Report is sent to plaintiff's address of record, the business address plaintiff gave in Milwaukee, Wisconsin (Docket No. 9, Pl. Letter at 1; Docket No. 11, Pl. Response at 4).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

29

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        April 23, 2018